**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International LLC, | No. CV-19-01715-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Sparta Nutrition LLC, | |
| Defendant. | |

Pending before the Court is Defendant Sparta Nutrition LLC's Motion to Dismiss under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6) and the primary jurisdiction doctrine. (Doc. 16, "Mot." or "Motion".) Plaintiff ThermoLife International LLC responded and Defendant replied. (Doc. 19, "Resp."; Doc. 20, "Repl.") The Court heard oral argument on January 10, 2020. (Doc. 31.) Having considered the pleadings, oral argument, and relevant law, the Court grants Defendant's Motion to Dismiss with leave to amend as explained below.[1]

## I. REQUEST FOR JUDICIAL NOTICE

Defendant requests judicial notice under Federal Rule of Evidence 201 of current labels and website advertising printouts for two of its products (*see* Docs. 17, 17-1), and the former labels for those products (*see* Docs. 21, 21-1). Plaintiff objects to the Court

---
[1] The Court acknowledges both parties' notices of supplemental authority relating to Plaintiff's litigation in this District against other similar defendants under either identical or similar causes of action. Defendant filed four notices of supplemental authority. (*See* Docs. 22, 22-1, 23, 23-1, 26, 26-1, 30, and 30-1.) Plaintiff filed one notice of supplemental authority. (*See* Docs. 24 and 24-1.) Defendant responded to Plaintiff's notice claiming it supports the Motion at issue here. (Doc. 25 at 1.)

taking judicial notice of the current labels and website advertising because they are disputed and "not public records or other record of undisputed accuracy." (Resp. at 6.) Plaintiff does not object to the Court judicially noticing the former labels.

Courts may "consider certain materials—documents attached to the complaint, documents *incorporated by reference* in the complaint, or matters of *judicial notice*— without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (emphasis added); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (explaining Rule 201 and incorporation-by-reference doctrine). Rule 201 permits courts to judicially notice a fact "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Ev. 201(b).

The Court agrees with Plaintiff that judicial notice of the current labels and website advertising is premature at this stage. However, the Court will judicially notice the former labels because Plaintiff does not object to Defendant's request. (*See* Docs. 21, 21-1.)

**II.    BACKGROUND**[2]

Plaintiff, a self-proclaimed "world leader in the use and development of nitrate technology in dietary supplements,[3]" is an Arizona LLC founded in 1998 with "at least 16 patents with more than 450 claims related [to] amino acid nitrate compounds, compositions, and their uses in dietary supplements and food products." (Doc. 1, "Compl." ¶¶ 1, 11, 19.) "With few exceptions, anytime an amino acid is combined with nitrate(s) and sold and marketed to consumers in a dietary supplement, that product relies on [Plaintiff's] patented technology." (*Id.* ¶ 23.) More specifically, "[Plaintiff] licenses and sells its patented creatine nitrate for use in dietary supplement products." (*Id.* ¶ 26.) Because of "the popularity of [Plaintiff's] nitrates in the dietary supplement market, [its] business is tied to the performance of products that rely on [its] patented ingredients and technologies."

---

[2] The Court accepts the Complaint's well-plead allegations as true. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).
[3] All "Dietary Supplements" quotations are amended to "dietary supplements."

- 2 -

(*Id.* ¶ 30.)

Defendant is a Florida LLC founded in 2016 that advertises and sells dietary supplements to consumers and wholesalers through its website. (*Id.* ¶¶ 12, 33.) Although Plaintiff "licenses and sells its patented creatine nitrate for use in dietary supplement products," (*id.* ¶ 26), and Defendant sells actual dietary supplements, (*id.* ¶¶ 12, 33), the Complaint alleges that "[Defendant] competes directly with [Plaintiff] and the licensees of [its] patented ingredients and technology in the dietary supplement market." (*Id.* ¶ 33.)

In claiming "an identifiable economic interest in the dietary supplement market," (*id*. ¶ 32), Plaintiff brings three claims against Defendant based on the "intentional false advertising" or false marking of products on its website, (*id.* ¶ 38). The three claims are: (1) false advertising under the Lanham Act; (2) common law unfair competition for false advertising; and (3) false patent marking under 35 U.S.C. § 292. (*Id.* ¶¶ 111-134.) The Complaint alleges Plaintiff is "harmed when consumers are misled into purchasing any falsely advertised product that competes with any product that contains ingredients that are sourced from [it] and/or technology that is licensed from [it]." (*Id.* ¶ 31.)

### III. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject-matter jurisdiction. *See Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) ("Article III standing is a species of subject matter jurisdiction." *Id.*). "Federal courts are courts of limited jurisdiction" and may only hear cases as authorized by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because our jurisdiction is limited, a cause of action presumably lies outside of it, and the burden of establishing jurisdiction is on the party asserting it. *Id.* "A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F.Supp.2d 910, 919 (D. Ariz. 2006) (citation omitted). "With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction." *Autery v. United*

1 *States*, 424 F.3d 944, 956 (9th Cir. 2005).

A party may also move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). When evaluating a complaint under Rule 12(b)(6), well-pled factual allegations are presumed true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must meet Rule 8(a)(2)'s minimum requirements. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint setting forth a cognizable legal theory survives a motion to dismiss if it contains sufficient factual matter stating a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility only exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### IV. DISCUSSION

Defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. (Mot. at 2.) Defendant also moves to dismiss, or in the alternative to stay this proceeding, under the primary jurisdiction doctrine. (*Id.*) "Because the issue of standing presents a 'threshold question of justiciability,' the Court will address the parties' Rule 12(b)(1) standing arguments first." *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2019 WL 3840988, at *1 (D. Ariz. Aug. 15, 2019) (citing *United States ex rel. Kelly v. Boeing*

*Co.*, 9 F.3d 743, 747 (9th Cir. 1993)); *see TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (2011) ("[T]he district court should have undertaken an independent analysis of Article III standing before determining standing under the Lanham Act."). Only if injury in fact is alleged will the Court address the other arguments. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so.").

### A. Article III Standing

"We have 'an obligation to assure ourselves' of litigants' standing under Article III." *Id.* at 340 (citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180 (2000)). Article III "endows the federal courts with the 'judicial Power of the United States.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quoting Art. III, § 1). "The judicial Power of the United States" only extends to "Cases" and "Controversies." Art. III, §§ 1-2. Undoubtedly, "[n]o principal is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811 (1997) (quotations and citation omitted).

"One element of the case-or-controversy requirement . . . is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quotations omitted) (citing *Raines*, 521 U.S. at 818); *DaimlerChrysler*, 547 U.S. at 342 (2006); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing exists to "prevent the judicial process from being used to usurp the powers of the political branches." *Clapper*, 568 U.S. at 408 (citation omitted); *see Spokeo*, 136 S.Ct. at 1547 ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy . . . [that] developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood.").

Plaintiff bears the responsibility of establishing standing, *Lujan*, 504 U.S. at 560-61, and must do so for each claim brought as well as the type of relief sought. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see DaimlerChrysler*, 547 U.S. at 352. To

establish standing, "[P]laintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S.Ct. at 1547; *see Lujan*, 504 U.S. at 560 ("[T]he irreducible constitutional minimum of standing contains [these] three elements."). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]." *Spokeo*, 136 S.Ct. at 1547. Here, both parties' primarily dispute whether the Complaint alleges injury in fact.

1. Injury in Fact

A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549; *see id.* at 1543 ("Article III standing requires a concrete injury even in the context of a statutory violation."). Rather, a "plaintiff must have suffered . . . an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561 (quotations and citation omitted).

Defendant argues the Complaint fails to identify an "actual injury to ThermoLife, such as lost sales, lost ability to license its technology, or damage its reputation." (Repl. at 6; *see* Mot. at 10 ("ThermoLife has not alleged any concrete injury, competitive or otherwise, proximately caused by the alleged false marking or advertising.").) Defendant further argues Plaintiff's "generalized interest in the dietary supplement industry as a whole . . . has not adequately alleged an economic or reputational injury flowing directly from [Defendant's] alleged conduct." (Repl. at 6.)

Although Plaintiff omits any targeted discussion of Article III standing in its brief,[4]

---

[4] Plaintiff conflates Article III Constitutional standing with statutory standing even though the distinction is clearly outlined in the case cited in support of its confusion. (*See, e.g.* Resp. at 7 (discussing how *Lexmark* "clarified the requirements for standing.")). In *Lexmark*, the Supreme Court clearly identified the difference between Article III and

(*see* Resp. at 1-3), it claims the Complaint alleges a "competitive injury" because Defendant's false advertising and marking misleads customers into purchasing its products instead of ones containing ingredients sourced from Plaintiff, (*id.* at 2). This allegedly "causes ThermoLife to lose licensing fees and sales" from Defendant's competitors. (*Id.* at 2.) Plaintiff further claims it does not need to allege "specific lost sales or deals," (*id.* at 10), or "that customers were misled," (*id.* at 11).

The Court agrees with Plaintiff that the Complaint adequately alleges Article III injury in fact at this stage. *Spokeo*, 136 S.Ct. at 1547. Aside from conclusory allegations that Plaintiff suffered "competitive" or "commercial" injuries by Defendant's conduct,[5] it also alleges Plaintiff is "harmed when consumers are misled into purchasing falsely advertised product that competes with any product that contains ingredients sourced from [it] and/or technology that is licensed from [it]." (Compl. ¶ 31.) Because of Defendant's false advertising and marking, the Complaint alleges "ThermoLife has suffered, and will continue to suffer damage to its business, reputation and good will and has lost sales and profits that ThermoLife would otherwise have made," (*id.* ¶ 118), and that "[e]ach false marking by [Defendant] . . . is likely to discourage or deter persons and companies from commercializing competing products or pursuing research and development of competing products and or related products, which injures ThermoLife and the public by stifling competition and increasing the costs of goods," (*id.* ¶ 133). At the motion to dismiss stage, these allegations sufficiently allege injury in fact. *See Lujan*, 504 U.S. at 561.

---

statutory standing. *See Lexmark*, 572 U.S. at 125 ("Lexmark does not deny that Static Control's allegations of lost sales and damage to its business reputation give it standing under Article III to press its false-advertising claim, and we are satisfied that they do[]"); *see also id.* at 129 ("[section 1125(a)'s] broad language might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III."). The *Lexmark* Court went on to discuss statutory standing, which involves whether plaintiff's claims "fall within the zone of interests protected by the law invoked," *id.* at 126 (quotations omitted) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)), and how "a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute," *id.* at 132.

[5] For instance, the Complaint repeatedly states Defendant's "false statements have caused ThermoLife competitive injury," (Compl. ¶ 39), and that "[Plaintiff] has been injured as a result of [Defendant's] false statements," (*id.* ¶ 123), but elaborates no further. These allegations alone insufficiently warrant finding Article III standing. (*See, e.g.*, *id.* ¶¶ 39, 73, 116-17, 123-24, 134.)

Accordingly, the Complaint adequately alleges Plaintiff suffered an injury in fact caused by Defendant's false advertising and marking of the products sold on its website. Neither party argues whether Plaintiff lacks standing under the causation and redressability prongs, and the Court is satisfied that they do. *See Lexmark*, 572 U.S. at 125 ("Lexmark does not deny that Static Control's allegations of lost sales and damage to its business reputation give it standing under Article III to press its false advertising claim, and we are satisfied that they do."). Having found Article III standing, the Court turns to whether the Complaint adequately states a claim.

### B. **Failure to State a Claim Under Rule 12(b)(6)**[6]

Each of Plaintiff's claims is premised on allegations that Defendant falsely advertises products sold on its website or falsely labels products as dietary supplements.[7] (*See* Compl. ¶¶ 114, 121, 129.) For Count I, Plaintiff alleges Defendant's false advertising violates the Lanham Act. (*Id.* ¶¶ 111-119.) For Count II, Plaintiff alleges Defendant unfairly competed in the dietary supplement market by falsely advertising its products. (*Id.* ¶¶ 120-127.) For Count III, Plaintiff alleges Defendant violated the false marking statute by falsely advertising products as "patented." (*Id.* ¶¶ 128-134.) The Court addresses each claim in turn below.

1. False Advertising Under the Lanham Act

One base of liability under the Lanham Act is false advertising under 15 U.S.C. § 1125(a)(1)(B). *Lexmark*, 572 U.S. at 122. False advertising claims require allegations that:

> (1) The defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be

---

[6] Notably, Defendant does not raise pleading sufficiency arguments under Federal Rule of Civil Procedure 9(b) for any of the claims.
[7] These counts are identical to another case in this District. *See Am. Fitness Wholesalers*, 2019 WL 3840988, at *2 (listing similar counts and additional civil conspiracy count).

> injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.[8]

*Bobbleheads.com v. Wright Bros., Inc.*, 259 F.Supp.3d 1087, 1096-97 (S.D. Cal. 2017) (quoting *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008)).

By its text, the Lanham Act "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." *Lexmark*, 572 U.S. at 129 (quoting 15 U.S.C. § 1125(a)(1)). *However*, not everyone with Article III standing can bring a false advertising claim under this statute. *Lexmark*, 572 U.S. at 129. Rather, in addition to Article III standing and pleading the above elements, the Supreme Court decided that a plaintiff asserting a false advertising claim must allege that its injury is within the "zone of interests" protected by the Lanham Act and that the injury was proximately caused by defendant's violation of the Lanham Act.[9] *See id.* at 127-30. The Lanham Act clearly identifies the interests it seeks to protect. *Id.* at 131. It states:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; *to protect persons engaged in such commerce against **unfair competition***; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127 (emphasis added).

Accordingly, "to come within the zone of interests in a suit for false advertising

---

[8] Defendant does not dispute whether these elements are adequately alleged.
[9] Proximate cause is an analysis apart from the "traceability" prong under Article III. *Lexmark*, 572 U.S. at 134 n.6. The proximate causation analysis here, "like any other element of a cause of action . . . must be adequately alleged at the pleading stage in order for the case to proceed. *Id.* (citing *Iqbal*, 556 U.S. at 678-679).

- 9 -

under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131-32. In further elaborating on the Lanham Act's "zone of interests," the Supreme Court has reasoned that "[t]he Lanham Act creates a cause of action . . . for competitors, not consumers." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014); *see id.* ("Competitors are within the class that may invoke the Lanham Act because they may suffer 'an injury to a commercial interest in sales or business reputation proximately caused by [a] defendant's misrepresentations." (citation omitted); *see also Jack Russell Terrier Network of Northern Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (noting how "a plaintiff must show . . . that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant."). This is not to say that *only* competitors may bring a cause of action. The Supreme Court has reasoned that "a rule categorically prohibiting all suits by noncompetitors would read too much into the Act's reference to 'unfair competition' in § 1127." *Lexmark*, 572 U.S. at 136. "It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors." *Id.*

To demonstrate proximate cause, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133-34; *see TrafficSchool.com*, 653 F.3d at 825 (reasoning that a plaintiff establishes a cognizable injury under the Lanham Act "if some consumers who bought the defendant's product under a mistaken belief[,] fostered by defendant[,] would have otherwise bought the plaintiff's product") (internal quotations, alterations, and citations omitted); *see Am. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2020 WL 122874, at *2 n.2 (D. Ariz. Jan. 10, 2020) (noting how *Lexmark* "relocated" *TrafficSchool*'s standing analysis as a "question of whether a plaintiff has stated a statutory cause of action rather than a jurisdictional one."). A proximate cause showing is "generally not made when the deception produces injuries to a fellow

commercial actor that in turn affect the plaintiff." *Lexmark*, 572 U.S. at 133-34. And although a "plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation[,] . . . a rule categorically prohibiting all suits by noncompetitors would read too much into the Act's reference to 'unfair competition' in § 1127." *Id.* at 136.

The Court begins with analyzing whether Plaintiff's injuries fall within the "zone of interests" test before addressing whether its injury is alleged to be proximately caused by Defendant's false advertising and/or marking. *See id.* at 140.

> a. The Complaint Inadequately Alleges Plaintiff's Injury Falls Within the "Zone of Interests."

Defendant argues the false advertising claim falls outside the "zone of interests" because Plaintiff has inadequately alleged an actual economic or reputational injury flowing from its conduct. (Repl. at 6.) More specifically, it argues "[t]here is no allegation of actual harm to ThermoLife, its licensees or alleged downstream buyers." (*Id.* at 6.) Rather, as it argues, the Complaint contains "hollow allegations of competitive harm." (*Id.* at 9; *see* Mot. at 11.) Plaintiff disagrees; it claims the "damage to its business, reputation, and good will," (Resp. at 10 (citing Compl. ¶¶ 116-118)), falls within the "zone of interests" that the Lanham Act serves to protect. (*See* Resp. at 10.)

The Court agrees with Defendant that the false advertising claim, *as alleged*, falls outside the Lanham Act's "zone of interests." It is nothing more than a "threadbare recital" that Plaintiff's claim falls within the zone of interests, "supported by mere conclusory statements." *Cf. Iqbal*, 556 U.S. at 678. The Complaint only vaguely "allege[s] an injury to a commercial interest in reputation or sales." *Cf. Lexmark*, 572 U.S. at 132. Yes, it alleges Plaintiff is "harmed when consumers are misled into purchasing any falsely advertised product that competes with any product that contains ingredients that are sourced from ThermoLife and/or technology that is licensed from ThermoLife." (Compl. ¶ 31.) Indeed, this is what the Lanham Act seeks to protect by creating a false advertising cause of action. *See* 15 U.S.C. § 1127. But the Complaint alleges no supporting facts for

such a generalized and nebulous claim. It instead simply alleges Plaintiff has "suffered a commercial injury to its reputation or sales" that is "harmful to [its] ability to compete in the dietary supplement market." (*Id.* ¶ 116-117.) This does not set forth sufficient factual allegations to show that Plaintiff's injury falls within the zone of interests. Just claiming it has "suffered, and will continue to suffer damage to its business, reputation, and good will and has lost sales and profits," (*id.* ¶ 118), falls far short of establishing enough factual allegations to show its claim falls within the "zone of interests." *See Iqbal*, 556 U.S. at 679 (noting how "conclusions[] are not entitled to the assumption of truth"). Notably, as Defendant points out, "ThermoLife does not allege that any licensees actually stopped licensing its patents," (Mot. at 12; Repl. at 6 ("There is no allegation in the Complaint of an ***actual injury*** to ThermoLife, such as lost sales, lost ability to license its technology, or damage to its reputation.")). Such factual allegations are certainly necessary to allege more than a conclusory claim of commercial injury. *See Lexmark*, 572 U.S. at 137-140; *TrafficSchool.com*, 653 F.3d at 825.

Although Plaintiff claims its theory of harm "is not complicated," (Resp. at 2), the Court is unable to decipher what the Complaint's vague, conclusory allegations mean, let alone identify any particular harm suffered by Plaintiff because of Defendant's purported false advertising. As a result, the Court finds Plaintiff inadequately alleged an injury falling within the "zone of interests" protected by the Lanham Act.

> b. <u>The Complaint Inadequately Alleges Defendant's False Advertising Proximately Caused Plaintiff's Injury.[10]</u>

Defendant argues Plaintiff "has not adequately alleged an economic or reputational injury flowing directly from Sparta's alleged conduct." (Repl. at 6.) It also appears to argue Defendant could not have proximately caused Plaintiff's injuries because they do not compete. (*See* Mot. at 10 ("ThermoLife's own allegations establish that Sparta is not a commercial competitor sufficient to invoke standing for claims based on . . . false

---

[10] The Court recognizes at the outset that this analysis only applies if the "zone of interests" test is met. The following analysis assumes Plaintiff adequately alleged an injury within the "zone of interests." To be clear, the Complaint does not do such a thing.

- 12 -

advertising"); *see also* Repl. at 5 ("ThermoLife and Sparta are not competitors").) Without pointing to any allegations in the Complaint, Plaintiff claims "plaintiff and defendant need not be direct competitors," but rather, "a false advertising plaintiff need only allege that its interests fall within the zone of interests" protected by the Lanham Act." (Resp. at 7.)

At the outset, Plaintiff incorrectly claims it *only* needs to allege its injury falls within the "zone of interests." *See Bobbleheads.com, LLC*, 259 F.Supp.3d 1087, 1096-97 (discussing false advertising claim elements *and* "zone of interests" and "proximate cause" test articulated in *Lexmark*). However, Plaintiff is correct that it does not have to directly compete with Defendant to bring a false advertising claim under the Lanham Act.[11] *See Lexmark*, 572 U.S. at 136. The *Lexmark* Court explicitly rejected Defendant's argument that Plaintiff *must* compete with Defendant for its injuries to fall within the Lanham Act's "zone of interests" over five years ago. *See id.* Indeed, the Supreme Court noted that "although diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising, it is not the only type of injury cognizable under § 1125(a)." *Id.* at 138.

Setting aside these digressions, the Complaint inadequately alleges Defendant's false advertising proximately caused Plaintiff's injury. *Cf. id.* at 133 ("[T]he proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct."). With no causal link between the parties, it is difficult to see how Defendant's purported false advertising necessarily caused "consumers . . . to withhold trade from . . . [P]laintiff." *Id.* Instead of "connecting the dots," the Complaint blankly alleges, without supporting allegations, that Defendant's purported false

---

[11] Defendant incorrectly claims the opposite. For instance, Defendant cites *Two Moms and a Toy, LLC v. Int'l Playthings, LLC*, 898 F.Supp.2d 1213, 1218-19 (D. Col. 2012) for the proposition that "to have standing for a false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." (Resp. at 13 (quoting *id.*).) The *Lexmark* Court explicitly rejected the Tenth Circuit's "competitor test." *See Lexmark*, 572 U.S. at 134 (declining to adopt Tenth Circuit's categorical test permitting only direct competitors to sue for false advertising). Defendant also cites *Brosnan v. Tradeline Solutions, Inc.*, 681 F.Supp.2d 1094, 1099 (N.D. Cal. 2010), another pre-*Lexmark* decision, for a similar proposition. (Mot. at 13.) Again, Defendant disregards *Lexmark*'s guidance that "[i]t is thus a mistake to infer that . . . [the Lanham Act] can protect *only* the false-advertiser's direct competitors." *Lexmark*, 572 U.S. at 136.

- 13 -

advertising *must have* caused Plaintiff's injuries because the two compete. (*See, e.g.,* Compl. ¶¶ 2, 13, 33, 61, 134.) Such an artificial and attenuated link between Defendant's purported false advertising and Plaintiff's harm, *inter alia*, defies the reality of business. For instance, there could be any number of intervening reasons for why Plaintiff's sales decreased, including new market entrants, increased dietary supplement regulation, a reduction of consumers' discretionary income, or even a change in consumer preferences for dietary supplements. Simply put, the Complaint's vague and speculative allegations do not show Defendant's false advertising caused its harm any more than any one of these reasons could have.[12] *See Iqbal*, 556 U.S. at 682. Without more, the Court is hesitant to disregard these many "obvious alternative explanation[s]" for Plaintiff's vaguely identified injuries even accepting the Complaint's well-pled allegations as true. *Id.*

Even further, the Court is unsatisfied that Plaintiff adequately alleged its "business is tied to the performance of products that rely on [its] patented ingredients and technologies." (*Id.* ¶ 30.) While proximate cause might be satisfied when harm is caused by "something very close to a 1:1 relationship" between a distributor and supplier as was the case in *Lexmark*, the Complaint fails to show that Plaintiff's business is similarly tied to *every product* it sources its ingredients to to the point where a loss by the distributor (i.e. "any ThermoLife-sourced product") is a loss to them. *Cf. Lexmark*, 572 U.S. at 139. Instead, such an attenuated and inappropriately classified relationship between the two parties (and numerous other similarly situated parties in this District) shows no presumption that Defendant proximately caused Plaintiff's injuries. *See TrafficSchool.com*, 653 F.3d at 827. No factual allegations support the inference that a consumer buying Defendant's purportedly falsely advertised products would have otherwise bought

---

[12] The Court also finds another court's reasoning for dismissal of a similar amended complaint in this District persuasively supports dismissal here. *See Am. Fitness Wholesalers*, 2020 WL 122874, at *3-4 ("Plaintiff has only made conclusory allegations that its sales dropped as a result of Defendant's sale of allegedly illegal dietary supplements. Plaintiff has made no attempt to connect the drop in sales it alleges with Defendant's sale of allegedly illegal products that are advertised as dietary supplements. None of Plaintiff's well-pled factual allegations nudges its claim into the realm of plausibility. . . . Plaintiff has not alleged any facts to support its claim that the source of its lost sales are from Defendant's alleged false advertising."). This is the case here too.

"products sourced by ThermoLife" *but for* Defendant's false advertising. *Id.* at 825; *Lexmark*, 572 U.S. at 133-34. Any inference to the contrary based on the Complaint's allegations is unwarranted.

Instead, it appears that "[Defendant's] deception produce[d] injuries to a fellow commercial actor that in turn affect[ed] the [P]laintiff." *Cf. Lexmark*, 572 U.S. at 133-34. Plaintiff highlights no meaningful relationship with any sourced products that compete with Defendant's to show otherwise. As another Court in this District previously stated in a similar case brought by Plaintiff against a similar defendant as the one in this case: "While Defendant's target market is consumers of dietary supplements, Plaintiff competes higher up the supply chain by marketing to production companies who use its patented ingredients and technology to manufacture dietary supplements." *Am. Fitness Wholesalers LLC*, 2019 WL 3840988, at *4. This is again the case here. The Complaint alleges Plaintiff and Defendant sell *different products* in *different markets* to *different customer segments*.[13] There is no indication that Plaintiff's upstream positioning as an ingredient licensor is directly tied to Defendant's downstream point of sale positioning as a retailer in any way. This attenuated relationship between Plaintiff and Defendant's products warrants no inference that a profit gained by Defendant would have necessarily gone to Plaintiff. *Cf. TrafficSchool.com*, 653 F.3d at 825-28.

With the foregoing in mind, the Court finds the Complaint also fails to allege Defendant's purported false advertising proximately caused Plaintiff's injury. Accordingly, the Court finds the Complaint fails to plead "an injury to a commercial interest in sales or business reputation proximately caused by the [D]efendant's misrepresentations" and must dismiss the claim. *Cf. Lexmark*, 572 U.S. at 140.

2. <u>Common Law Unfair Competition for False Advertising</u>

"In the Ninth Circuit, claims of unfair competition and false advertising under . . . common law are 'substantially congruent' to claims made under the Lanham Act." *Walker*

---

[13] For instance, Plaintiff sells and licenses dietary supplement *ingredients* to manufacturers "for use in dietary supplement products," (*see* Compl. ¶¶ 26-27), while Defendant sells and advertises *finished products* to customers, (*id.* ¶ 33).

*& Zanger, Inc. v. Paragon Industries, Inc.*, 549 F.Supp.2d 1168, 1182 (N.D. Cal. 2007) (citing *Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994)). Here, Plaintiff alleges Defendant "made false statements of material fact in commercial advertisements about the products sold on its website." (Compl. ¶ 121.) It further alleges Plaintiff "has suffered a commercial injury based upon a misrepresentation by [Defendant]." (*Id.* ¶ 124.)

Defendant argues Plaintiff's common law unfair competition claim should be dismissed for similar reasons as the false advertising claim under the Lanham Act. (Mot. at 15.) Plaintiff baldly claims "its unfair competition claim is adequately plead" because it has "adequately pleaded a competitive injury." (Resp. at 13.) Plaintiff points to no portion of the Complaint and explains no further. As mentioned above, the Court identifies no alleged injury to Plaintiff based on Defendant's purported false advertising in the Complaint. Having found no injury, the Court similarly dismisses Plaintiff's unfair competition claim. *See Walker & Zanger*, 549 F.Supp.2d at 1182.

### 3. False Marking Under 35 U.S.C. § 292

Section 292(a) prohibits "mark[ing] upon . . . in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public." 35 U.S.C. § 292(a). This section authorizes suit to any "person who has suffered a *competitive injury* as a result of a violation of this section." 35 U.S.C. § 292(b) (emphasis added). Absent a "competitive injury," a plaintiff lacks standing to enforce § 292. *See Sukumar v. Nautilus, Inc.* 785 F.3d 1396, 1399-1402 (discussing Section 292(a)'s "competitive injury" requirement as it relates to "potential competitors" and concluding standing to sue extends to "some potential competitors"). A "competitive injury" is "[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Id.* at 1400 (citation omitted). Additionally, a plaintiff's "competitive injury" must necessarily be caused by the defendant's violation of section 292(a)." *Id.* at 1400 n.3. While other elements exist to

allege a false marking claim,[14] the one challenged here is whether a "competitive injury" exists.[15]

Defendant argues the Complaint fails to allege Plaintiff suffered a competitive injury. (Mot. at 7.) Instead, as it argues:

> ThermoLife baldly alleges that "[e]ach false marking by Defendant identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing products or pursuing research and development of competing products and or related products, which injures ThermoLife and the public by stifling competition and increasing the costs of goods."

(Mot. at 7 (quoting Compl. ¶ 133).) Defendant further argues the false marking claim must be dismissed because the parties do not compete, and a cause of action only extends to those who have "suffered a *competitive* injury." (Mot. at 10-11.) Lastly, it argues the Complaint's "conclusory allegations that it suffered competitive harm" are insufficient to allege a false marking claim. (*Id.* at 12 (citing Compl. ¶¶ 124, 125, 134).)

Plaintiff claims it "has alleged a competitive injury based on its role as a seller and licensor of patented ingredients and technology[.]" (Resp. at 11 (citing *ArtSkills, Inc. v. Royal Consumer Prods., LLC*, No. 3:17-CV-1552 (VAB), 2018 WL 3520431, at *7 (D. Conn. Jul. 20, 2018).)[16] Plaintiff again points to no portion of the Complaint explaining this competitive injury beyond the conclusory allegations that it competes with Defendant. Again, even if the parties somehow competed, the Complaint inadequately alleges with

---

[14] For instance, a plaintiff only has a section 292 false marking claim by alleging (1) an unpatented article; (2) a purpose to deceive the public; and (3) a competitive injury. *See Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011).

[15] While not challenged here, false marking claims must also satisfy Rule 9(b)'s heightened pleading standard. *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011) ("This court holds that Rule 9(b)'s particularity requirement applies to false marking claims[.]"). As previously stated, Defendant does not raise Rule 9(b) in its briefs.

[16] The Court is perplexed why Plaintiff cites an inapposite case outside this Circuit, where another plaintiff's allegations of competitive injury under a false marking claim were too conclusory to support the claim that its conclusory allegations here are detailed enough. Plaintiff does not explain why this case is cited and the Court will not conjure an argument on its behalf.

any precision what that competitive relationship looks like. *Iqbal*, 556 U.S. at 682.

Without any factual allegations defining the parties' competitive relationship, the false marking claim must be dismissed. *See Sukumar*, 785 F.3d at 1400. The Court agrees with Defendant that the Complaint, in addition to failing to allege any non-conclusory injury (as explained above), inadequately alleges Plaintiff and Defendant compete to bring a false marking claim. Thus, absent competition between the parties, no "competitive injury" may exist. *See id.* at 1399-1400.

## IV. CONCLUSION

The Court dismisses the Complaint in its entirety under Rule 12(b)(6) for its numerous shortcomings as explained above. As a result, the Court need not reach Defendant's argument that dismissal or a stay of this proceeding is appropriate under the primary jurisdiction doctrine. (Mot. at 15-18; Repl. at 2.)

## V. LEAVE TO AMEND

Plaintiff requests leave to amend, (Resp. at 15), at the objection of Defendant, (Mot. at 18; Repl. at 12). The request was not made in accordance with Rule 15 of the Federal Rules of Civil Procedure nor in accordance with Local Rule of Civil Procedure 15.1.[17] Plaintiff's request also does not explain what it hopes to add to the Complaint. It also did not include the proposed text of the Amended Complaint required by Local Rule 15.1.

In accordance with the well-settled law in this Circuit, however, because "it is not 'absolutely clear' that [Plaintiff] could not cure [the Complaint's] deficiencies by amendment," the Court will give her the opportunity to do so. *See Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014) (citations omitted); Fed. R. Civ. P. 15(a)(2) ("leave to amend should be "freely" given "when justice so requires[]"). Plaintiff's amended complaint must address the deficiencies identified above. Plaintiff's amended complaint should follow the form detailed in Local Rule 7.1.

Within thirty (30) days from the date of entry of this Order, Plaintiff may submit an amended complaint. Plaintiff must clearly designate on the face of the document that

---

[17] Available at http://www.azd.uscourts.gov/local-rules.

it is the "First Amended Complaint." If Plaintiff decides to file an amended complaint, it is reminded that an amended complaint supersedes the original complaint, *see Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012), and it must be complete in itself and "must not incorporate by reference any part of the preceding pleading, including exhibits," L.R.Civ 15.1.

Accordingly,

**IT IS ORDERED GRANTING** Defendant's Motion to Dismiss (Doc. 16) Plaintiff's Complaint under Rule 12(b)(6) with leave to amend;

**IT IS FURTHER ORDERED** that Plaintiff may file a First Amended Complaint within 30 days of the date of this Order. The Clerk of Court is directed to terminate this case if a First Amended Complaint is not filed within 30 days;

**IT IS FURTHER ORDERED DENYING** Defendant's Request for Judicial Notice, (Doc. 17), and **GRANTING** Defendant's Supplemental Request for Judicial Notice, (Doc. 21).

Dated this 16th day of January, 2020.

Honorable Susan M. Brnovich
United States District Judge